George THORSEN, Plaintiff,

v.

COUNTY OF NASSAU, The Nassau County Civil Service Commission, and John Carway, Defendants.

No. 03–CV–1022 (TCP).

United States District Court, E.D. New York.

Dec. 9, 2003.

See also 751 N.Y.S.2d 859.

Louis D. Stober, Jr., Law Offices of Louis D. Stober, Jr., LLC, Garden City, NY, for Plaintiff.

Bonnie Garone, Nassau County Attorney, Damon Levenstien, Donna Anne Napolitano, Nassau County Attorney's Office, Nancy Nicotra, Mineola, NY, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants the County of Nassau, the Nassau County Civil Service Commission and John Carway [collectively, "Defendants"] move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended civil rights complaint filed against them by plaintiff George Thorsen ["Plaintiff"] for failure to state a claim upon which relief may be granted. This Court heard oral argument on December 5, 2003. For the following reasons, Defendants' motion is **GRANTED, WITH PREJUDICE**, as to Plaintiff's Fourteenth Amendment claim, and **GRANTED**, but **WITHOUT PREJUDICE** and with **LEAVE TO RE–FILE** when appropriate, as to Plaintiff's First Amendment claim.

### Background

A. *Factual background*

The essential facts of this case are basically undisputed. Plaintiff had served as the Assistant to the Director of Probation for Nassau County since 1996. In 2000, he was chosen—"nominated," in the words of Defendants at oral argument, or "appointed," in the words of Plaintiff—by County Executive Thomas Gulotta ["Gulotta"] to serve as the Director of Probation. Then the County Civil Service Commission ["the Commission"], allegedly "acting in concert with Defendant John Carway, disqualified Thorsen because he belonged to and supported a different faction of the Republican Party than Carway." *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint at 4–5. Alternatively, in Defendants' interpretation at oral argument, the Commission disqualified Plaintiff because he lacked sufficient managerial experience.

In a subsequent Article 78 proceeding in State Supreme Court, the verdict of which was upheld upon appeal by both the Appellate Division Second Department, and the Court of Appeals, it was found that the Commission's determination that Plaintiff was not qualified for the job was itself not justified. *See id.* at 5; *see also Thorsen v. Nassau County Civil Service Comm'n*, 300 A.D.2d 405, 406, 751 N.Y.S.2d 859 (2d Dep't 2002) (stating that "[w]e agree with the Supreme Court that the Commission failed to set forth a rational basis for its determination that the petitioner was not qualified for the position of Director," and "direct[ing] the Nassau County Civil Service Commission to process the petitioner's application for appointment to the position of Nassau County Director of Probation"); *appeal denied without comment* by 100 N.Y.2d 516, 801 N.E.2d 423 (2003). According to Plaintiff's counsel's oral argument, State court litigation is still pending in which Plaintiff seeks to force the Commission to follow the orders of the Court of Appeals and inferior State courts, and perform what Plaintiff characterizes as the ministerial task of approving Plaintiff's selection as Director.

Plaintiff now sues in federal court under U.S. CONST. AMENDS. I and XIV,[1] 42

---

1. The First Amendment states that Congress shall make no laws abridging the freedoms of

U.S.C. § 1983,[2] the N.Y. CONST. ART. V § 6,[3] common law torts of defamation, and unspecified sections of the New York State Civil Service Law. (Plaintiff also cites as a basis for his complaint, without explanation, the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*) Plaintiff makes, in essence, a Fourteenth Amendment claim that he was denied his property by Nassau County without the due process of law, and a First Amendment claim that the Defendants abridged his rights of speech and association. *See* Plaintiff's Amended Complaint and Memorandum, *passim.*

Plaintiff seeks a judgment directing Defendants "to cease and desist from interfering with Plaintiff's rights"; a declaration that Defendants' acts violated his federal and State constitutional and statutory rights, and a permanent injunction of such acts on these grounds; a similar declaration that Plaintiff's disqualification was unlawful; and an award of the salary Plaintiff would have received as Director by serving through age 75, compensatory and punitive damages, and fees and costs. *See* Plaintiff's Amended Complaint at ¶ 45.

### Discussion

#### A. *Legal burdens*

In a motion to dismiss for failure to state a claim upon which relief may be granted under FED.R.CIV.P. 12(b)(6), the defendant bears the burden of proof to show that even if the complaint's allega-

tions are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor, the plaintiff is still not entitled to the relief sought. *See Lerner v. Fleet Bank,* 318 F.3d 113, 117 (2d Cir.2003).

#### B. *The parties' arguments*

Defendants argue that Plaintiff's Fourteenth Amendment claim should be dismissed because he failed to demonstrate a legitimate property interest in either the Director's job he failed to obtain, or in the Assistant's position he voluntarily resigned from; and also because he has not been denied due process by the State, in light of the successful resolution of his Article 78 proceeding. Defendants further argue that Plaintiff's First Amendment claim should be dismissed because he failed to demonstrate either affiliation with an identifiable political group (other than a "faction of the Gulotta Administration"), or that his membership in such a political sub-group was "a substantial or motivating factor in the Commission's decision to disqualify him for the position." Defendant's Memorandum of Law in Support of their Motion to Dismiss at 4–6.[4]

Plaintiff, of course, disagrees on all counts.

The parties' arguments raise several questions. First, as to Plaintiff's Fourteenth Amendment claim, did Plaintiff have a property interest in either the Director's or the Assistant's positions; and, assuming *arguendo* that he did, whether

---

speech or association, and the Fourteenth Amendment states that no State, or subdivision thereof, shall deprive any person of property without due process of law. The First Amendment is applied to the States through the Fourteenth Amendment.

2. Section 1983 states that every person who, under color of law, subjects any United States citizen to the deprivation of any rights secured by the Constitution, shall be liable to the party injured in an action at law.

3. Article V, Section 6 states that all State and local civil service appointments and promotions shall be made on a competitive basis according to merit and fitness.

4. The Defendants additionally urge the Court to refrain from exercising its jurisdiction over Plaintiff's State law claims, and finally to strike Plaintiff's claim for punitive damages. *See id.* at 16; Plaintiff's Reply Memorandum at 5.

Plaintiff received due process at the State level. Second, as to Plaintiff's First Amendment claim, was Plaintiff's affiliation with a "faction of the Gulotta Administration" an affiliation with an identifiable political group; and, assuming again that this is so, was Plaintiff's affiliation a substantial or motivating factor in the Commission's decision to disqualify him. The Court raises a third question, *sua sponte:* whether it is appropriate for the federal judiciary to intervene in this dispute, when related (and possibly dispositive) litigation is concurrently pending in the State courts.

## I. Fourteenth Amendment claim

Plaintiff's Fourteenth Amendment claim is based upon his alleged property interest in the positions of Director of Probation and of Assistant to the same, and his subsequent denial of these rights without due process of law.

(1) *Did Plaintiff have a property interest in either the Director's or the Assistant's positions*

Defendants claim that Plaintiff never had a vested property interest in the Director's position, and that he divested himself of his property interest in the Assistant's position when he voluntarily resigned from it.

(a) THE DIRECTOR'S POSITION

Defendants cite *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) for the proposition that plaintiffs alleging a denial of their property rights under the Fourteenth Amendment must have more than a unilateral expectation of a property benefit; rather, they must instead "have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. 2701; Defendants' Memorandum at 4. Defendants argue that Plaintiff's "nomination" to the Director's position is just such a unilateral expectation. Plaintiff agrees

with Defendants regarding the relevant legal standard, but responds that his legitimate claim of entitlement to the Director's position is grounded in his "appointment" by Gulotta, and in the subsequent decisions of the New York State courts that he was wrongfully denied his appointment by the Commission. *See* Plaintiff's Memorandum at 7–8.

*Roth* favors Defendants' position more than Plaintiff's. In *Roth,* an assistant professor at a State university was not rehired at the culmination of his one-year employment contract, without the benefit of a hearing, and allegedly because he had exercised his free speech rights in ways in which the university's administration disapproved. *See id.* at 566, 568 n. 5, 92 S.Ct. 2701. The professor then alleged, *inter alia,* a property interest in further employment with the university. The Supreme Court found that

the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a *property* interest. . . .

*Id.* at 578, 92 S.Ct. 2701 (emphasis in original, footnote omitted).

▆ In the case at bar, Plaintiff was not incumbent in the Director's position, while Roth had served for a year as an assistant professor, and so Plaintiff's property interest is even less cognizable than Roth's was. Plaintiff argues, however, argue that his "appointment" by Gulotta gave him a legitimate claim to the position, unlike Roth's

term employment contact, which had expired.

A study of *Roth's* progeny makes plain that the Constitution protects, but does not create, property interests, and that applicable State laws and regulations will determine the existence of such rights. These cases also make plain that probationary employees do not have vested property interests in their jobs. *See, e.g., Watson v. Buffalo,* 164 F.3d 620, 1998 WL 716585 at *1 (2d Cir.1998) (unpublished opinion) (holding that there is no property interest in a probationary position as a police officer); *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 629 (2d Cir.1996)(holding that there is no property interest in a probationary position as an assistant principal); *Jannsen v. Condo,* 101 F.3d 14, 16 (2d Cir.1996) (holding that there is no property interest in a probationary position as a rape counselor); *Finley v. Giacobbe,* 79 F.3d 1285, 1297–98 (2d Cir.1996) (holding that there is no property interest in a probationary position as a medical director).

If no property rights attach to *probationary* jobs, then, by extension, no property interests attach to jobs that *have not yet even commenced.* Regardless of the merits of the parties' dispute at oral argument as to whether Gulotta had "nominated" or "appointed" Plaintiff as Director, the resolution of this question would not change the fact that Plaintiff never actually obtained the post. Accordingly, Plaintiff lacks a cognizable property interest in his unrealized appointment as Director of Probation.

(b) THE ASSISTANT'S POSITION

■ Plaintiff also asserts a property interest in his position as Assistant to the Director of Probation, as "the actions taken against him by the Defendants, and their refusal to assign him any meaningful tasks[,] forced him to retire." Plaintiff's

Memorandum at 10. Plaintiff cites Seventh Circuit authority for the proposition that these allegations may give rise to a finding that he was therefore been denied a property interest. *See id.* In their Reply Memorandum, Defendants contest Plaintiff's factual allegations, and emphasize that Plaintiff *voluntarily* resigned from his position. *See id.* at 3–4.

A person who voluntarily resigns from a position may not, in most cases, then be heard to express a property interest in it. In *Finley,* the Second Circuit stated that absent the case of an "employee who resigns in anticipation of a discharge motivated by illegal reasons,"

> where the alleged illegality is the employer's failure to afford the employee legally required procedural protections, and the employee voluntarily resigns before being discharged, the resignation effectively deprives the employer of the opportunity to comply with the procedural obligations and forecloses the employee from seeking the protections of her previous rights as an employee.

*Id.* at 1296.

Absent some evidence, not currently to be found in his pleadings, that Plaintiff was forced out the door by Nassau County for illegitimate reasons, Plaintiff's claim for a lost property interest in a position from which he voluntarily resigned is even weaker than his claim of a property interest in a position that he never attained. Therefore, his claim will not lie.

(2) *Did Plaintiff receive due process at the State level*

■ Defendants state the obvious: to wit, that "the Plaintiff successfully challenged the Commission's decision by bringing an Article 78 proceeding in New York State Supreme Court and was granted the relief he requested ... there is a complete absence of any allegation to sup-

port or suggest any procedural due process deficiency." Defendants' Memorandum at 4–5.

Plaintiff responds that the Article 78 proceeding, even though it was decided in his favor and upheld upon appeal, cannot provide him with the relief he seeks, such as "payment for pain and suffering as a result of the improper and illegal actions taken against him." Plaintiff's Memorandum at 8. Plaintiff argues that his position is supported by the decision of the Second Circuit in *Todaro v. Norat*, 112 F.3d 598 (2d Cir.1997), the holding of which he summarizes as being that resort to an Article 78 proceeding for a plaintiff such as himself may be "constitutionally inadequate." *Id.* at 8–9.

Defendants distinguish *Todaro* as being a case about an incumbent employee. *See* Defendants' Reply Memorandum at 2–3. Defendants are correct. In *Todaro*, the plaintiff-appellee had been employed for eleven years in a senior position at the State Insurance Fund, and the Second Circuit found that "a government entity must give its *tenured* employee notice and an opportunity to respond before he is terminated from a public position." *See Todaro*, 112 F.3d at 599–600 (emphasis supplied).[5]

Furthermore, while Plaintiff is understandably dissatisfied with the original decision of the Commission to reject his appointment as Director of Probation, it is difficult to see what further due process Plaintiff can expect from the State government than its unanimous rejection of the County Civil Service Commission's adverse decision, up to and including the State's highest court. There is simply no failure of due process by New York State in this case. It is not clear why Plaintiff cannot pursue his claims against the Defendants in the State courts. Far from denying Plaintiff due process in such a way that cries out for federal judicial intervention by means of the authority given to the Article III courts by the Civil War Amendments, the New York courts have thus far been quite amenable to Plaintiff's position, and indeed are still entertaining Plaintiff's arguments in further, related proceedings in this matter.

Plaintiff never had a vested property interest in the Director's position, and he divested himself of his property interest in the Assistant's position when he voluntarily resigned from it. Even if he did have such a property interest, he has received—and by all appearances is continuing to receive—due process at the State court level. Accordingly, Defendants are **GRANTED** their motion to dismiss, **WITH PREJUDICE**, Plaintiff's Fourteenth Amendment claim against them.

## II. First Amendment claim

Plaintiff's First Amendment claim is based upon his affiliation with a "faction of the Gulotta Administration" being a substantial or motivating factor in the Commission's decision to disqualify him.

(1) *Was Plaintiff's affiliation with a "faction of the Gulotta Administration" an affiliation with an identifiable political group*

■ Defendants argue that in "order to allege that the denial of a promotion infringed his First Amendment rights, an employee must plead that the offending decision was made because of his political affiliation or support ... [and] the Com-

5. Indeed, only one other court has cited *Todaro* for the proposition that an Article 78 proceeding may be an insufficient post-deprivation remedy for an alleged due process violation, and in that case, the deprivation at issue was an allegedly wrongful arrest. *See Tiffany v. Village of Briarcliff Manor,* 1997 WL 177895 at *11 n. 2 (S.D.N.Y. Apr. 14, 1997).

plaint fails to allege facts demonstrating that he maintained an affiliation with an identifiable political group." Defendants' Memorandum at 5. Plaintiff responds, citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), that intra-party disputes may provide the grounds for First Amendment patronage claims in which a person is wrongfully denied employment on the basis of their political affiliation. *See* Plaintiff's Memorandum at 16. Defendants reply that "Plaintiff is not even alleging that his political views or affiliation ... influenced the decision against him. Rather, he is alleging that [Defendant John] Carway enjoyed better 'connections' in local government circles." Defendants' Reply Memorandum at 5.

 *Rutan*, while standing for the proposition that promotions "based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees," *id.* at 76, 110 S.Ct. 2729, does not precisely support Plaintiff's position. *Rutan* involved lower-ranking public employees (a rehabilitation counselor, a road equipment operator, a prison guard, a garage worker and a dietary manager) who suffered adverse consequences for *not* being members of the Republican Party, *see id.* at 67, 110 S.Ct. 2729, unlike the Plaintiff in the case at bar, who is a high-ranking employee who lost a promotion to a fellow Republican. While the Opinion of the Court in *Rutan* nowhere suggests that an intra-party dispute might not be the basis of a complaint such as Plaintiff's, neither does speak to the specific question of intra-party disputes, either.

There is little case law within this jurisdiction of the issue of First Amendment claims related to patronage and intra-party political disputes. In *Juncewicz v. Patton*, 2002 WL 31654957 at *6 (W.D.N.Y. Oct. 8, 2002), the court denied summary judgment of a First Amendment claim in which the plaintiff alleged political discrimination on the grounds of an alleged intra-party dispute in which he lost his position as a contract monitor for the county water authority. In *Hering v. Hill*, 814 F.Supp. 356, 358 (S.D.N.Y.1993), the court held, regarding an intra-party dispute, that "the federal Constitution permits dismissal of a county deputy election commissioner because of political disagreements between the deputy and the commissioner for whom the deputy is entitled to act in circumstances defined by the statutes." And in *Mirabella v. Board of Elections*, 507 F.Supp. 338, 340 (S.D.N.Y.1990), the court held that "it is proper that intra-party affiliation or loyalty may be taken into account without violating the First Amendment rights of those not appointed" as election inspectors.[6]

Plaintiff's case is not on all fours with any of these cases. His hoped-for job as County Director of Probation is much more senior than those of the election inspectors in *Mirabella*, but probably only slightly more senior that the deputy county election commissioner in *Hering* or the contract monitor at the county water authority in *Juncewicz*. However, his position is—or should be—far less partisan in nature than those held by the election officials in *Mirabella* and *Hering*. His position is therefore most analogous to that of the plaintiff in *Juncewicz*, in which the court declined to grant summary judgment to the defendant municipality.

---

**6.** *See also Espada v. Rosado*, 2001 WL 1020549 at *3 (S.D.N.Y. Sept. 4, 2001) (stating that plaintiffs' argument that it was illegal, in light of *Rutan* and *Mirabella*, for prospective Democratic election workers to allegedly be ordered to join a particular Democratic club as a pre-condition of employment, "was certainly not frivolous").

It is not clear if Plaintiff's dispute with another "faction of the Gulotta Administration" is somehow ideological or political in nature. Plaintiff's dispute with Carway may indeed, as Defendants suggest, have less to do with issues of conservatism or liberalism within the Republican Party, or with competing theories of criminal rehabilitation, and far more to do with Carway's greater organizational strength within the party.

While noting Defendants' contention that Plaintiff is attempting "to cloak a garden-variety personnel grievance over a denied promotion in the rhetoric of constitutional tort" (Defendants' Reply Memorandum at 5), the Court is also quite sensitive to Plaintiff's rights of freedom of speech and especially of association. As the Supreme Court stated in *Rutan*, albeit regarding a traditional inter-party patronage dispute, the "First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate," and "conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so." 497 U.S. at 76, 78, 110 S.Ct. 2729. Plaintiff may be entitled to relief if he has, due to an intra-party dispute, been denied a deserved promotion to a non-partisan position because of his exercise of associational rights within the Nassau County Republican Party.

(2) *Was Plaintiff's affiliation a substantial or motivating factor in the Commission's decision to disqualify him*

Defendants argue that Plaintiff's complaint lacks specific allegations of fact regarding the issue of whether "the unidentified purported 'faction' was a substantial or motivating factor in the Commission's decision to disqualify him for the position." Defendants' Memorandum at 6. Plaintiff does not really answer Defendants' objections, other than to say that he has alleged his own membership in the Nassau County Republican Party—which is irrelevant, as everyone involved in the dispute, including Carway, is presumably a Republican. *See* Plaintiff's Memorandum at 15.

Plaintiff's First Amendment claim fails, at this time, due to its lack of specific allegations of fact regarding the motivations, beyond Carway's greater sway with the local party, behind the Commission's decision to disqualify Plaintiff. If Plaintiff can, for example, allege that he was denied the Commission's approval on the basis of his constitutionally-protected ideological or political views, for what should be a non-partisan post, he may be able to make an actionable claim.

Plaintiff's affiliation with a "faction of the Gulotta Administration" is, generously viewed, possibly a sufficient predicate for his First Amendment claim. However, Plaintiff's failure to allege any facts showing that his membership in this faction was a substantial and improper motivating factor in the Commission's decision to disqualify him, or to explain what, if any, of his constitutionally protected viewpoints are at issue in his dispute with the other faction or factions of the erstwhile Gulotta Administration, leads to the Court's determination that his Amended Complaint is insufficiently plead. Accordingly, Defendants are **GRANTED** their motion to dismiss, **WITHOUT PREJUDICE,** Plaintiff's First Amendment claim against them, and Plaintiff is given **LEAVE TO RE FILE a SECOND AMENDED COMPLAINT** at an appropriate time in the future.

### III. Federalism and judicial economy

The undersigned is mindful of the fact, elicited from Plaintiff's counsel during oral argument, that State court litigation concerning the matters described above has

yet to be resolved. The impression given at oral argument was that Plaintiff ultimately wishes this Court to force the Commission to grant him his appointment as Director of Probation. Yet this is not possible at the present time, for reasons of both federalism and judicial economy. The State courts may choose to issue such a mandamus to the Commission, but given the present posture of this case, the United States District Court lacks the jurisdictional authority to do so, at least until Plaintiff exhausts the remedies available to him below. Accordingly, Plaintiff should not consider filing his Second Amended Complaint in this action until related State court litigation is resolved.

## Conclusion

Plaintiff did not have a property interest in either the Director's or the Assistant's positions, and he received, and is continuing to receive, due process at the State level. Therefore, Defendants are **GRANTED** their motion to dismiss, **WITH PREJUDICE,** Plaintiff's Fourteenth Amendment claim against them.

Plaintiff's intra-party political affiliation may be a sufficient basis for his First Amendment claim *if* he can allege facts showing that his affiliation was a substantial and improper motivating factor in the Commission's decision to disqualify him. Therefore, while Defendants are **GRANTED** their motion to dismiss, **WITHOUT PREJUDICE,** Plaintiff's First Amendment claim against them, Plaintiff is given **LEAVE TO RE-FILE a SECOND AMENDED COMPLAINT.** Plaintiff should not re-file such a complaint until related State court litigation is resolved.

Defendants' requests that the Court refrain from exercising its jurisdiction over Plaintiff's State law claims, and to strike Plaintiff's claim for punitive damages, need not be reached at this time.

**SO ORDERED.**